**SO ORDERED.**

**SIGNED this 25 day of July, 2013.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| THOMAS SCOTT COOPER<br>REBECCA J. COOPER | 11-02804-8-SWH |
| DEBTORS | |
| HOMEWARD RESIDENTIAL, INC. | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | H-12-00300-8-AP |
| FIRST BANK, THOMAS SCOTT COOPER, and<br>REBECCA J. COOPER, | |
| Defendants. | |

### ORDER ALLOWING FIRST BANK'S MOTION TO DISMISS

The matter before the court is the motion filed by defendant First Bank to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable in this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. A hearing took place in Raleigh, North Carolina, on May 16, 2013. The parties filed supplemental briefs on May 28, 2013. For the reasons that follow, the motion to dismiss will be allowed.

Thomas Scott Cooper and Rebecca J. Cooper filed a petition for relief under chapter 13 of the Bankruptcy Code on April 9, 2011. Several years before, on February 14, 2006, the debtors had executed an equity line of credit note and corresponding Equity Line Deed of Trust in favor of First Bank, reflecting a security interest in property located at 804 Pamlico Drive in Cary, North Carolina (the "Property"). Later that year, on December 1, 2006, the debtors executed a promissory note for $150,000 in favor of American Brokers Conduit, secured by a deed of trust on the same property. The note was subsequently assigned to American Home Mortgage Servicing, Inc., which has changed its name to Homeward Residential, Inc.

Homeward initiated the present adversary proceeding on December 3, 2012, seeking a determination that it has a valid security interest in the Property which is superior to that of First Bank or that First Bank has no security interest in the Property at all. Additionally, Homeward seeks an order requiring the cancellation of record of the First Bank deed of trust. Homeward alleges that when it loaned the debtors $150,000 in the December 1, 2006 transaction, funds were collected by the closing attorneys and transmitted to First Bank in an amount sufficient to pay the balance of the line of credit in full, and that attorneys acting for the debtors and Homeward requested that First Bank terminate the line of credit and cancel the deed of trust. First Bank did not, however, terminate the line of credit or cancel the deed of trust, and the debtors subsequently began drawing from the line again such that a balance of approximately $87,598 existed as of the petition date. As a matter of record as of the petition date, based upon the timing of recordation of the deeds of trust, First Bank holds a first position lien on the Property, and Homeward holds a second position lien. The debtors listed the value of the Property on their Schedule D at $75,000. On May 3, 2011, the debtors filed a Motion to Value Collateral seeking an order determining the value of the Property at $75,000

and adjudicating the claim of Homeward as unsecured, i.e., stripping off the lien of Homeward. On May 19, 2011, Homeward filed a response which challenged the motion both procedurally and substantively.[1] Because of the asserted value of the Property, the priority of liens takes on added importance: the deed of trust which is determined to be of second priority will be deemed unsecured and treated as such in the debtors' chapter 13 plan.

Although the debtors are named as defendants in this proceeding, Homeward alleges that First Bank's conduct and omissions form the basis for the relief sought. As such, this is essentially a dispute among non-debtor parties. However, this court has jurisdiction over the dispute because its outcome would be determinative of the status of claims in the case and ultimate distribution to creditors. See 28 U.S.C. § 1334(b); Old Cutters, Inc. v. City of Hailey (In re Old Cutters, Inc.), 474 B.R. 219, 226 (Bankr. D. Idaho 2012) (finding that a proceeding arose in the bankruptcy case, conferring jurisdiction upon the court, where a plaintiff-creditor asked the court to declare another creditor's lien void, because such a challenge to the validity of an interest in the bankruptcy estate both invoked the claims allowance process and would have a significant impact on case administration). This is a core proceeding in which this court may enter final orders because the matter is one which would necessarily be resolved in the claims allowance process. See Stern v. Marshall, 131 S.Ct. 2594, 2618 (2011) (holding that bankruptcy courts have constitutional authority to enter final orders in matters which "would necessarily be resolved in the claims allowance process"), Yellow Sign, Inc. v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.), 466 B.R. 750, 768 (Bankr. M.D.N.C. 2012) (finding, based on the Supreme Court's decision in

---

[1] The hearing on the motion and response has been continued numerous times and is presently set for August 21, 2013.

Stern, that bankruptcy courts have constitutional authority to enter a final order if the action at issue "would necessarily be resolved in the claims allowance process"). The adversary proceeding is intended to be the vehicle that determines which of the parties, Homeward or First Bank, has a first priority deed of trust in the Property. If the valuation of the Property asserted by the debtors holds, the party determined to have a second priority deed of trust will be deemed unsecured.

Turning to the complaint, the basis of Homeward's request for relief is that notwithstanding the debtors' full compliance, through their closing attorneys, with N.C. G.S. § 45-82.2 to cause First Bank to mark its deed of trust "satisfied" and effectively extinguish its lien, First Bank failed to do so. North Carolina General Statute § 45-82.2 provides as follows:

> Upon receipt of a request from an authorized person to terminate an equity line of credit, the lender shall (i) terminate the borrower's right to obtain advances under the borrower's equity line of credit; (ii) apply all sums subsequently paid by or on behalf of the borrower in connection with the equity line of credit to the satisfaction of the equity line of credit and other sums secured by the related equity line security instrument; and (iii) when the balance of all outstanding sums secured by the related equity line security instrument becomes zero, satisfy the related equity line security instrument as a matter of public record pursuant to G.S. 45-37. A request to terminate an equity line of credit shall be conclusively deemed to have been submitted by or on behalf of a borrower if it is submitted by an authorized person.

N.C. G. S. § 45-82.2. As such, Homeward argues that because First Bank should have cancelled its lien but did not, the court should effect cancellation, or at a minimum, determine that First Bank holds a subordinate interest to that of Homeward.

First Bank moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, for failure to state a claim upon which relief can be granted. First Bank

raises the following in support of its motion: (1) the statute cited in the complaint was not in effect at the time of the closing, and therefore does not apply; (2) the complaint is barred by the three-year statute of limitations applicable to claims based on liability created by statute; and (3) the statute on which Homeward bases its claims does not provide for the remedy sought.

According to First Bank, a different version of this statute was in effect at the time of the subject transaction which required that the request to cancel be made by the borrower, with no mention of "an authorized person."[2] Because Homeward's complaint states that the request to cancel First Bank's deed of trust was made by the debtors' attorney, rather than the debtors as the borrowers, First Bank contends that the statute does not apply as a matter of law and Homeward has therefore failed to state a claim for which relief can be granted and the complaint should be dismissed.

First Bank additionally contends that Homeward's claims are barred by the three-year statute of limitations imposed by N.C.G.S. § 1-52(2). Section 1-52(2) sets a three-year limitation period on claims based "[u]pon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it." N.C.G.S. § 1-52(2). First Bank argues that because the

---

[2] Former section 45-81 provides as follows, in pertinent part:

> At any time when the balance of all outstanding sums secured by a mortgage or deed of trust pursuant to the provisions of this Article is zero, the lender shall, upon the request of the borrower, make written entry upon the security instrument showing payment and satisfaction of the instrument; provided, however, that such security instrument shall remain in full force and effect for the term set forth therein absent the borrower's request for such written entry.

N.C.G.S. § 45-81(c) (2006).

5

subject transaction regarding the equity line occurred in 2006, and Homeward waited until 2013 to file the complaint, any alleged violation of N.C.G.S. § 45-82.2 is time-barred.

Finally, First Bank argues that N.C.G.S. § 45-81(c), on which plaintiff bases its claim for relief, is unambiguous and simply does not provide for the remedies plaintiff seeks, nor are such remedies found in related statutes. According to First Bank, the only statutory remedy available when a lender fails to mark a deed of trust satisfied on the public record is the pursuit of damages by the landowner pursuant to N.C.G.S. § 45-36.9(b).

Shortly after First Bank filed its motion to dismiss, and obviously in response thereto, Homeward filed a motion to amend the complaint to include, in addition to N.C.G.S. § 45-81(c), all prior versions of the statute. Further, Homeward argues that since the dispute arises out of the deed of trust which is a contract under seal, or involves an action not specifically set forth in Articles 5 and 5A of Chapter 1 of the North Carolina General Statutes, a ten year statute of limitations should apply. Finally, Homeward argues that the relevant statutory scheme provides for cancellation of a deed of trust through a "satisfaction agent," and that this court is the appropriate forum for resolution if a dispute arises in that process. Even if N.C.G.S. § 45-81 et seq. does not provide a remedy for a lender's failure to cancel a deed of trust, Homeward argues, N.C.G.S. §§ 45-36.14 and 45-36.15 set out a process by which a "satisfaction agent" may inform the lender that it intends to file an affidavit of satisfaction as to the deed of trust. If the lender agrees that cancellation is proper, the deed of trust will be cancelled. If not, the affidavit cannot be filed and a factual dispute arises, which, in Homeward's view, can be resolved by this court in the form of a declaratory judgment. Alternatively, Homeward asserts that the court may determine the positions of the respective deeds of trust as it would with any other question of priority, pursuant to 11 U.S.C. § 506.

**DISCUSSION**

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court held that in order to withstand a motion to dismiss a complaint must include "enough facts to state a claim to relief that is plausible on its face."  The Court fleshed out this standard in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), holding first that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and second that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 1949.  The allegations must be more than a "formulaic recitation of the elements" of a claim.  Id. at 1951.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  129 S. Ct. at 1949; see also Angell v. BER Care, Inc.(In re Careamerica, Inc.), Adv. Pro. No. L-08-00174-8-AP (Bankr. E.D.N.C. July 23, 2009) (setting out a detailed analysis of Twombly and Iqbal).

In this case, Homeward ultimately seeks to either extinguish First Bank's security interest in the Property or subordinate it so that Homeward's lien will reign supreme.  The problem is that even though Homeward has set forth alleged misconduct or omissions by First Bank, which the court must assume to be true for purposes of a motion to dismiss, the court cannot find a link between those acts and omissions and the remedy sought.  In essence, the court acknowledges its authority to determine both the validity and priority of liens, but cannot exercise that authority pursuant to any theory advanced by Homeward arising out of the claims set forth in the complaint.  Distilling the complaint down to its core, Homeward asserts that the debtors fulfilled their duties under N.C.G.S.

§ 45-82.2, but First Bank failed to cancel its deed of trust as required by that statute. As a remedy for First Bank's alleged violation of N.C.G.S. § 45-82.2, Homeward asks this court to cancel First Bank's deed of trust in the Property, or at least hold that Homeward's lien is senior in priority. However, N.C.G.S. § 45-82.2 does not provide for cancellation or subordination as a remedy for the failure to cancel a deed of trust, nor does any related statute. In fact, while stating that its provisions are not exclusive, N.C.G.S. § 45-84 provides that:

> [n]othing in this Article shall invalidate or overrule any rule of validity or priority applicable to any mortgage, deed of trust, or other security instrument failing to comply with the provisions of this Article.

N.C.G.S. § 45-84. Instead, the statutory remedy which exists is a claim pursuant to N.C.G.S. § 45-36.9, <u>by the landowner</u>, for damages. The debtors/landowners have not sought to enforce N.C.G.S. § 45-36.9 – understandably so since it is their conduct in drawing upon the line of credit after the closing of the First Bank loan that has brought the parties to their present positions.[3]

In its final post-hearing brief, Homeward asserts, for the first time, that the statutory satisfaction process set forth in N.C.G.S. §§ 45-36.14 and 45-36.15 enables it to seek cancellation of the First Bank deed of trust and, therefore, the enforcement of that right by this court. Homeward initiated the statutory satisfaction process on May 28, 2013, by sending First Bank its letter of intent to file an affidavit of satisfaction. The court believes that process, however, will be a "non-starter" for several reasons. First and perhaps foremost, the complaint asserts no claim based on the statutory satisfaction process. On a motion to dismiss, a court may not ordinarily consider materials other than the complaint and documents incorporated thereto. <u>Braun v. Maynard</u>, 652 F.3d 557, 559

---

[3] The dischargeability of the Homeward debt is not before the court, and it is noted that the time period for initiating a dischargeability action expired on July 5, 2011.

8

n.1 (4th Cir. 2011). Even if the statutory satisfaction process had been pled in the complaint, it presents at least one potential threshold impediment for Homeward. As of the petition date, the balance on the line was approximately $87,598. According to the statute, the satisfaction agent sending a letter of intent to file an affidavit of satisfaction must have "reasonable grounds to believe that . . . the secured creditor has received full payment or performance of the secured obligation." N.C.G.S. § 45-36.14(a)(3). This would appear to be a formidable roadblock to invoking the process, given that even though a full payment may have been made in 2006, a balance exists at present.[4] Thus, Homeward's complaint does not establish that any statutory relief is available for the claims asserted.

Although not raised in the complaint and therefore not relevant to the motion to dismiss, the court will consider Homeward's equitable and contractual theories made in its post hearing submissions for purposes of determining whether Homeward should be allowed leave to amend the complaint to include such theories. Homeward asks the court to exercise its equitable jurisdiction to subordinate First Bank's lien. However, in balancing the equities of this case, the court finds no basis upon which such relief should be granted. The record indicates that Homeward took no action to invoke the statutory satisfaction process provided by §§ 45-36.14 and 45-36.15 until May 28, 2013 – six and one half years after it funded the debtors' loan. A party cannot sit on its rights for that long and seek equitable relief. See, e.g., Central States, Southeast & Southwest Areas Pension

---

[4] Another potential problem is the requirement that the satisfaction agent submitting the affidavit of satisfaction must be "acting for and with authority from the landowner." N.C.G.S. § 45-36.14(a). This claim was omitted from the complaint, and thus there is no relevant evidence in this regard. Copies of various letters and affidavits were submitted along with Homeward's post-hearing brief dated May 28, 2013 in which the satisfaction process was first mentioned, however the court has not considered such documents since they are outside the scope of review on a motion to dismiss under Rule 12(b)(6).

Fund v. Central Transport, Inc., 841 F.2d 92 (4th Cir. 1988) ("Some controversies are not amenable to judicial resolution, and some grow beyond the remedial powers of a court. This is particularly true when a party, seeking a return to the status quo ante, sits idly by and permits intervening events to extinguish old rights and create new ones.") Additionally, equitable relief is not usually available when there is a legal remedy. See, e.g., Jefferson Standard Life Ins. Co. v. Guilford County, 225 N.C. 293, 300 (N.C. 1945) ("Equity will not lend its aid in any case where the party seeking it has a full and complete remedy at law."). Homeward has not shown that its legal remedies have been exhausted, for example: timely objection to the debtors' discharge of its debt or recourse against its closing attorney or title insurance policy. The fact that some of those remedies may not still be available is the result of its inaction and Homeward should not therefore be rewarded with equitable relief to the detriment of First Bank.

Finally, Homeward seeks to enforce a contract to which it is not a party – only the debtors and First Bank are parties to the Equity Line Deed of Trust. Notwithstanding that fact, the court has reviewed the deed of trust and does not find any provision imposing an affirmative duty on First Bank to cancel the lien, nor was any such contract language cited by Homeward. The only relevant language is as follows, "[t]he [s]ecured [d]ebt includes a revolving line of credit. Although the [s]ecured [d]ebt may be reduced to a zero balance, this [s]ecurity [i]nstrument will remain in effect until released." Equity Line Deed of Trust, Ex. 7 to Homeward's brief dated May 28, 2013. The contract does not contain any terms regarding termination of the equity line or release of the lien.[5] As such, the complaint fails to state a claim based in contract for which relief can be granted.

---

[5] Cf. Peoples Bank v. OneWest Bank, FSB (In re Finding), 2013 U.S. Dist. LEXIS 96951 (W.D.N.C. July 10, 2013) (finding that the express terms of the deed of trust required cancellation).

Based on the foregoing, the court finds that the complaint cannot withstand the motion to dismiss. While the Rule 12(b)(6) inquiry typically centers around determining whether the elements of a particular cause of action have been sufficiently pled to state a plausible claim for relief, this case requires a step back to determine whether a necessary precursor exists: the assertion of a viable legal theory. It has been generally held that "[i]f the complaint alleges – directly or indirectly – each of the elements of a viable legal theory, the plaintiff should be given the opportunity to prove that claim." Andrews v. Paxson, 2012 U.S. Dist. LEXIS 19919, *4 (E.D. Va. Feb. 16, 2012). Here, there is no viable statutory, equitable or contractual theory which would allow the relief requested by Homeward, and as such, the complaint should be dismissed.

Accordingly, First Bank's motion to dismiss the complaint is **ALLOWED.** Inasmuch as the proposed amendment to the complaint will not cure its deficiencies, the pending motion to amend the complaint is **DENIED**.[6]

**SO ORDERED.**

**END OF DOCUMENT**

---

[6] Since the court has found that the remedy requested is not available to Homeward notwithstanding the version of N.C. G.S. § 45-82.2 considered, amendment to allow the assertion of previous version of the statute would be futile.